(No. 33253.—

School District No. 79 *et al.*, Appellants, *vs.* The County Board of School Trustees of Lake County *et al.*, Appellees.

*Opinion filed November 18, 1954—Rehearing denied Jan. 18, 1955.*

SNYDER, CLARKE & DALZIEL, of Waukegan, (LEWIS D. CLARKE, of counsel,) for appellants.

NORMAN, ENGELHARDT, ZIMMERMAN & PRINCE, of Chicago, (HAROLD W. NORMAN, and ALLYN J. FRANKE, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

On July 31, 1952, certain residents of Community Consolidated School District No. 80, of Lake County, proceeding under the terms of article 4B of the School Code, (Ill. Rev. Stat. 1951, chap. 122, pars. 4B-1 to 4B-24,) filed a petition with the County Board of School Trustees, hereafter referred to as the Board, for annexation to Community Consolidated School District No. 79 located in the same county. Notice was published and at a subsequent hearing the Board allowed the prayer of the petition. On administrative review proceedings in the circuit court of said county, the order of the Board was sustained and this appeal by District 79 and certain taxpayers has followed.

Appellants urge that the circuit court erred in sustaining the order of the Board for the following reasons: (1) that section 4B-4 of the School Code is deficient in that it fails

to provide a proper rule or standard for the guidance of county boards acting thereunder and hence is void as an unlawful delegation of legislative power, contrary to article III of our constitution, (2) that the notice of the hearing was defective because it did not contain a proper designation of the districts or a description of the territory affected, and (3) that the decision of the Board and of the circuit court was not in the best interests of the schools in the area and was against the weight of the evidence.

Looking first to the constitutional objection, we find that section 4B-4 of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 4B-4,) provides in part as follows: "Upon the filing of a petition with the secretary of the county board of school trustees under the provisions of Sections 4B-1 or 4B-2 of this Act the said secretary shall cause a notice of the presentation of such petition to be given in writing to each board of any district in his county involved in the proposed boundary change and by publishing a notice thereof at least once each week for three successive weeks in at least one newspaper having a general circulation within the area of the territory involved in the proposed change of boundaries. The notice shall state when the petition was filed, the description of the territory, the prayer of the petition and the return day on which the hearing upon the petition will be held which shall not be more than ten days after the last publication of notice. On such return day or on a day to which the county board of school trustees shall continue said hearing the county board of school trustees shall hear the petition but may adjourn the hearing from time to time or may continue the matter for want of sufficient notice or other good cause. Prior to the hearing the secretary shall submit to the county board of school trustees maps showing the districts involved, a report of financial and educational conditions of districts involved and the probable effect of the proposed changes. The county board of school trustees shall hear evidence as

to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the Superintendent of Public Instruction, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted."

It is, of course, fundamental that the legislature may give an administrative body discretionary powers to decide an issue if it establishes standards under which that discretion may be exercised. (*People ex rel. Duffy* v. *Hurley,* 402 Ill. 562; *Vallat* v. *Radium Dial Co.* 360 Ill. 407.) Appellants' contention is that section 4B-4 does not constitute a sufficient guide by which the Board may determine whether or not the petition for annexation should be allowed and they support such a contention with a line of cases originating with *Kenyon* v. *Moore,* 287 Ill. 233. In that case the court had before it section 89 of the School Law as amended in 1917, (Laws of 1917, p. 738,) which authorized the county superintendent of schools to call an election to vote on the proposition to establish a community high school district. It provided that the school district should be formed as far as practicable "about a community center, and have sufficient territory, assessed valuation, and prospective high school pupils to form a satisfactory and efficient high school." Further, the section provided that if, in the judgment of the county superintendent, the proposed district "does not meet the requirements heretofore specified in this section" he could refer the petition back to the petitioners with recommendations as to changes or could deny the prayer of the petition. We held the statute unconstitutional because no requirements or standards were set forth under which a county superintendent could decide whether or not a proposed district would make

a "satisfactory and efficient high school." In short, the case involved an incomplete and indefinite law rather than an attempt to delegate legislative power.

In *Jackson* v. *Blair,* 298 Ill. 605, also cited by appellants, an act that permitted the superintendent of public instruction to order change in boundaries of all "abnormal" high school districts was held invalid. Again the decision was predicated on the fact that the term "abnormal" was vague and indefinite and did not provide a sufficient guide for the administrative officer. Similarly in *North* v. *Board of Education,* 313 Ill. 422, we held unconstitutional an act that authorized a county judge, upon petition, to detach territory from one district and add it to another if the territory or any part thereof was not "an essential portion" of the district from which the territory was sought to be detached. The decision was based on the same concept, namely, that the word "essential" was vague and indefinite and susceptible of different interpretation by different judges.

While the cases discussed appear on the surface to support appellants' position, it is our opinion that the statute here involved is clearly distinguishable from those considered in the decisions relied upon, in that section 4B-4 gives to a county board of school trustees a standard under which their discretion may be properly exercised. The section clearly specifies the type of evidence that should be heard and considered at the hearing on the petition and prescribes that the board shall take into consideration the division of the funds and assets which will result from the change in boundaries, the school needs and the conditions of the territory affected, and the ability of the district to meet the standards of recognition as prescribed by the Superintendent of Public Instruction. It is to be admitted that these standards are general rather than specific in nature. However, it would be both impossible and undesirable for the legislature to draft rigid nondiscre-

tionary standards which would embrace each and every school district boundary change, for conditions surrounding the changes are seldom the same. It is our conclusion that the specifications as to what evidence may be submitted and the spelling out of what matters may be considered by the board are as definite as can be formulated.

Section 4B-4 grants power to the board quite similar to that granted in the past to trustees of schools and such grants have heretofore been upheld by this court as a proper delegation. A case in point is *Milstead* v. *Boone,* 301 Ill. 213, where the statute involved provided that a board composed of the county superintendent of schools, the county judge and the county clerk "may in its discretion" change the boundary of any township or community high school districts when petitioned to do so. The duties of the board were quite similar to those imposed by section 4B-4, and we upheld the law, stating, (p. 218) : "The duties of the *ex-officio* board are very similar to those of the school trustees in relation to the change of boundaries. Like school trustees it cannot act nor be compelled to act until the law is complied with. The *ex-officio* board cannot, of its own motion, change the boundaries of school districts. Though it has the discretion to allow or deny the petition before it, it can do nothing else. It can not make any changes in boundaries of districts other than the exact changes prayed for in the petition. It can do only the specific thing asked in the petition. It has no power to refuse to do that and do another thing. While it may decide the sufficiency of the petition, the act confers upon it no discretion as to what shall constitute a sufficient petition. That is defined by the law. When the petition does not comply with the law the *ex-officio* board has no power to say that the one presented is sufficient. In short, no power is given to that board to determine what the law shall be. The discretion to be exercised by it is a ministerial or administrative discretion to determine, not what the law shall be but what

shall be done in the matter of its execution. This is neither a delegation of legislative nor judicial power. *People* v. *Buskirk, supra; City of Chicago* v. *Washingtonian Home, supra; Nolting* v. *Batterton,* 231 Ill. 394; *Owners of Lands* v. *People, supra."*

*People ex rel. Board of Education* v. *Board of Education,* 380 Ill. 311, involved a challenge of the constitutionality of sections 46 and 57 of the School Law. (Ill. Rev. Stat. 1941, chap. 122, pars. 46 and 57.) Those sections provided that the trustees of schools "may in their discretion" make certain school boundary changes and authorized the county superintendent to review their decision. In holding the section valid, we said, at pages 318-319: "While it is at times difficult to draw the distinction as to whether the exercise of a power is administrative or legislative, the language of the court in *Sheldon* v. *Hoyne, supra,* is helpful. There it was stated: 'As long ago as *People* v. *Reynolds,* 5 Gilm. 1, this court held that to establish the principle that whatever the legislature shall do it shall do in every detail or else it will go undone, would, in effect, destroy the government. The government could not be carried on if nothing could be left to the judgment and discretion of the administrative officers. "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." ' In this State, trustees of schools have always been vested with some discretion in the performance of their duties to district or redistrict within the township so long as their action is in compliance with the provisions of the statute, and any injustice or abuse of such limited discretion is reviewable by the courts."

In further elaborating on the same sections of the School Law, the following was pointed out in *Fisher* v. *Birkey,*

299 Ill. 145, 150: "The object and intention of said sections of the School law, as this court has frequently held, are to empower township trustees to form new districts and to change the boundaries of districts, *in their discretion,* when properly petitioned, to suit the wishes and convenience of a majority of the inhabitants of the township or townships, and authority and power are vested in the county superintendent of schools to use *a like discretion* in affirming or overruling the trustees when an appeal has been taken to him. In all such cases the trustees and the superintendent of schools should exercise their *discretion* and power in accordance with the wishes and convenience of a majority of the inhabitants affected by their acts." (Emphasis supplied.)

On consideration of these authorities, most of which are further discussed and distinguished in *Husser* v. *Fouth,* 386 Ill. 188, it is our conclusion that section 4B-4 does not constitute an invalid delegation of legislative power and we further find that *Kenyon* v. *Moore,* 287 Ill. 233, and the cases predicated upon it, are restricted to hold merely that the legislature cannot give to an administrative body unlimited discretion to act when that discretion is not guided by standards under which it may be intelligently exercised.

Appellants' next contention is that the notice of public hearing given by the secretary of the Board was defective because it did not contain a proper designation of the districts affected or a description of the territory affected by the petition for annexation. The act requires that the prayer of the petition be set forth in the public notice of hearing. Appellants claim that such was not done here because the petition asks for the annexation of "Community Consolidated School District Number Eighty," while the notice refers to "Community Consolidated District #80." It is further contended that the legal description of the districts involved was incompletely set forth in the notice.

Such objections must fall, however, when it is recognized that the basic purpose of giving notice of a public hearing is to inform all interested persons of the time, place and purpose of the hearing. It is not contended by appellants that they were either misled by the notice or that they did not attend the hearing because they felt it did not concern their own school district. As we stated in *People ex rel. Dixon* v. *Community Unit School District,* 2 Ill. 2d 454, 461, in which a similar contention was made, "There is no evidence in the record that the description complained of was so ambiguous and uncertain that the voters were confused."

Appellants' final contention is that the decision of the school trustees and of the circuit court was not in the best interest of the schools in the area and was against the weight of the evidence. We have examined the record and find the argument without merit. It must be remembered that under the Administrative Review Act, which act gave the circuit court power to review the order of the County Board of School Trustees, we have specifically held that an order of an administrative officer or board is binding unless manifestly against the weight of the evidence. (*Local Union No. 222* v. *Gordon,* 406 Ill. 145.) We recognize that in all matters concerning a change in school boundaries or annexation to or detachment from territory of an existing school district certain inequities to individual taxpayers will probably arise and disagreement over proposed changes may be present. However, such disagreement cannot be used as a valid argument to overthrow a valid judicial decision of the issues.

The judgment of the circuit court of Lake County sustaining the order of the Board is affirmed.

*Judgment affirmed.*